Michael (Mickey) **BARRETT**, Appellant,

v.

**ERA AVIATION, INC.**, Appellee.

No. S-8097.

Supreme Court of Alaska.

Feb. 25, 2000.

Rehearing Denied March 21, 2000.

Andrew K. Kurzmann, Anchorage, for Appellant.

Marc G. Wilhelm, Richmond & Quinn, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Chief Justice.

## I. INTRODUCTION

Michael "Mickey" Barrett sued Era Aviation, Inc., claiming that he suffered permanent damage to his inner ear as a passenger on an Era flight from Era's negligent maintenance of the in-flight pressurization system. The superior court excluded part of the testimony of Barrett's expert witness, prohibiting him from testifying about the standard of care for aircraft maintenance or about whether Era had negligently maintained the aircraft at issue. The court also sent the jury instructions that contained potentially conflicting definitions of negligence. Barrett appeals both the exclusion of his expert's testimony and the superior court's jury instructions. Because we find that the conflicting jury instructions constitute reversible error, we reverse and remand the case for a new trial.

## II. FACTS AND PROCEEDINGS

On December 25, 1990, Mickey Barrett flew as a passenger on an Era Aviation flight from Anchorage to Barrow. On September 9, 1992, Barrett filed a personal injury suit against Era, claiming that he had suffered severe and permanent damage to his inner ear as a result of pressurization problems caused by negligent maintenance on the flight.

Barrett hired John Spencer, a pilot familiar with the type of aircraft at issue, to testify as an expert witness on the subject of aircraft pressurization. Spencer testified that he had logged over 8,000 hours of flight time as a captain and over 4,000 hours of flight time as a co-pilot in similar aircraft. Spencer also testified that he was qualified as a check airman, ground school instructor, flight school instructor, and simulator instructor for this type of aircraft.

Prior to trial, Era filed a motion in limine seeking, *inter alia*, to exclude those portions of Spencer's testimony beyond his area of expertise. Era claimed Spencer lacked sufficient expertise to testify regarding the standard of care applicable to Era and whether or not Era breached this standard. The trial court granted Era's motion in part, ruling that Spencer could testify generally about aircraft pressurization problems, but could not testify about the applicable standard of care or about whether Era had been negligent.

At the close of the trial, the jury received instructions and retired to deliberate. After deliberating only a short while, the jury sub-

mitted a note, indicating its confusion as to how to reconcile Jury Instruction No. 14 (a general negligence instruction) and Instruction No. 16 (a common carrier negligence instruction). The judge consulted with counsel for both sides. Era's attorney requested that the judge either tell the jury he could give them no advice, or tell them to consider all of the instructions as a whole. Barrett's attorney requested that the judge instruct the jury to emphasize the common carrier instruction. The judge eventually directed the jury to refer to Instruction No. 34, which required jury members to read all of the instructions as a whole.

The jury again deliberated without requesting further clarification. It ultimately returned a verdict in favor of the defendant, Era Aviation.

## III. STANDARD OF REVIEW

We review a trial court's exclusion of expert testimony for abuse of discretion.[1] Jury instructions involve questions of law to which we apply our independent judgment.[2] A jury instruction containing an erroneous statement of law constitutes reversible error if it prejudiced one of the parties; prejudice exists "if it can be said that the verdict may have been different had the erroneous instruction not been given." [3]

## IV. DISCUSSION

### A. Was Spencer Qualified to Testify as an Expert?

Era argued in its motion in limine that Spencer's testimony should be limited because he "is not trained or licensed in the area of aircraft maintenance." Era's argument on appeal is likewise based in part on the premise that because Spencer is not li-

censed as a mechanic he is not competent to testify as to the standard of care required of mechanics.

This argument erroneously assumes that a particular license is required before a witness is judged competent to testify.[4] Instead, "[t]he true criterion" in determining whether one qualifies as an expert and whether his opinion is admissible "is whether the jury can receive appreciable help from this particular person on this particular subject." [5]

It is true that Spencer is a pilot, not a mechanic. But as a pilot, Spencer is required to possess significant knowledge about the proper maintenance of the planes he flies. At trial, Spencer testified that he had taught classes and trained maintenance personnel on the workings of pressurization systems and how to troubleshoot such systems. Earlier, in his deposition, Spencer testified that he had "taught school subjects" on pressurization systems and had "done a lot of training" using the type of aircraft in question.

Spencer possesses sufficient familiarity with the maintenance of aircraft pressurization systems to qualify as an expert. "It is not necessary that the witness devote full time to the subject matter of his expertise; it is sufficient that he has the requisite intelligence and reasonable contact with the subject matter to allow him to demonstrate his expertise with reasonable skill." [6]

As a general rule, the trial judge retains "wide latitude" in deciding whether to admit the testimony of an expert witness.[7] In Lewis v. State, we held that the test for reversible abuse of discretion was "whether the reasons for the exercise of discretion are clearly untenable or unreasonable," noting that reasonableness depended on whether

1. See City of Fairbanks v. Nesbett, 432 P.2d 607, 611–12 (Alaska 1967).

2. See VECO, Inc. v. Rosebrock, 970 P.2d 906, 911 n. 11 (Alaska 1999).

3. Beck v. State, Dep't of Transp. and Public Facilities, 837 P.2d 105, 114 (Alaska 1992) (citations omitted).

4. See Handley v. State, 615 P.2d 627, 630 (Alaska 1980).

5. Id. at 631 (quoting Crawford v. Rogers, 406 P.2d 189, 192 (Alaska 1965) (alteration in original)).

6. Lewis v. State, 469 P.2d 689, 693–94 (Alaska 1970).

7. Ferrell v. Baxter, 484 P.2d 250, 267 (Alaska 1971).

the trial judge balanced "the value of the evidence against the danger of undue prejudice, distraction of the jury from the issues, and waste of time." [8]

In the present case, we have very little indication that the trial court performed this balancing test. It heard no argument from the parties on the motion in limine. Instead, after reading the pleadings, it issued a ruling (which was followed by an order later the same day) stating that "it ... appears that the witness does not have sufficient expertise to testify about whether certain acts of maintenance were negligent or regarding standard of care relating to maintenance of an aircraft." [9] This represents an insufficient basis upon which to rest the exclusion of a portion of Spencer's testimony. Nowhere did the trial court address the issues raised by the *Lewis* balancing test.

Because Spencer was qualified to testify as an expert witness as to the specifics of this case, and because the exclusion of his testimony is supported by insufficient explanation, we would hold that the trial court abused its discretion in excluding his testimony as to the negligent maintenance issue. However, because two justices dissent from this holding, the court is evenly split on this issue. Where we are evenly divided, we affirm the court below. [10] Therefore, we do not reverse on the grounds that Spencer's testimony should not have been excluded.

**B. *Jury Instructions***

**1. *Did the jury instructions correctly state the applicable law?***

■ At the close of trial, the court gave the jury two instructions concerning the standard of care: a general negligence instruction [11] and an instruction on the higher standard of care applicable to common carriers. [12]

Era argues that together these instructions represented a correct statement of the law. Era contends that Instruction No. 14, the ordinary negligence instruction, serves to define negligence for the other instructions that use the term without defining it. In addition, Era argues that Barrett submitted his case under two alternative theories of negligence which are reflected in the jury instructions. These arguments are without merit. Once the court had ruled that Era was a common carrier, the proper jury instruction was the higher standard of care applicable to common carriers—the "utmost duty of care."

In *Widmyer v. Southeast Skyways, Inc.*, we held that failure to give a common carrier instruction upon the plaintiff's request constituted reversible error. [13] We deemed the general negligence instruction "inadequate." [14] This case is somewhat distinguishable from *Widmyer*, as the court here also gave a common carrier instruction (a correct statement of the law). However, the trial

---

**8.** *Lewis*, 469 P.2d at 695–96.

**9.** At trial, the judge noted that the foundation for Spencer's expertise was more extensive than the pleadings had indicated, but he nonetheless cautioned Barrett's attorney not to let Spencer's testimony stray onto the topic of improper maintenance.

**10.** *See Dimmick v. State*, 473 P.2d 616, 621 (Alaska 1970).

**11.** Instruction No. 14 provided:

I will now define negligence for you. Negligence is the failure to use reasonable care. Reasonable care is that amount of care that a reasonably prudent person would use under similar circumstances. Negligence may consist of doing something which a reasonably prudent person would not do, or it may consist of failing to do something which a reasonably prudent person would do. A reasonably pru-

dent person is not the exceptionally cautious or skillful individual, but a person of reasonable and ordinary carefulness.

In this case, you must decide whether both plaintiff and defendant used reasonable care under the circumstances.

**12.** Instruction No. 16 provided:

You are instructed as a matter of law, Defendant, ERA Aviation, Inc., is a common carrier. As a common carrier, Defendant, ERA Aviation, Inc., owed its passengers a duty of utmost care and the vigilance of a very cautious person toward their passengers. Defendant, ERA Aviation, Inc., is responsible for any, even the slightest, negligence, and is required to do all that human care, vigilance and foresight should do under all the circumstances.

**13.** 584 P.2d 1, 5–6 (Alaska 1978).

**14.** *Id.* at 5.

court's failure to inform the jury to apply the common carrier standard, rather than the general negligence standard or some compromise between the two, means that the court did not effectively instruct the jury on the correct standard. The instructions given are therefore not a correct statement of the law.

### 2. Did giving the jury instructions constitute plain error?

■ Barrett did not object to either of the negligence instructions; in fact, he proposed them. Generally, we review jury instructions that are not objected to for plain error, found where "an obvious mistake exists such that the jury instruction creates 'a high likelihood that the jury will follow an erroneous theory resulting in a miscarriage of justice.' " [15]

This case is unusual, however, because the jury requested clarification concerning how to read the two negligence instructions together. Rather than correcting the problem of the conflicting instructions, the judge instructed the jury to consider all the instructions as a whole. At this point, Barrett did object. It is the court's response to the jury question which is reviewable. Since Barrett duly objected to the response, it is reviewed for legal error, rather than plain error.

Once the jury requested clarification, the court was required to give the jury a legally correct answer. The court did not meet this duty, creating a significant risk that the jury found for the defendant because it applied a lower standard of care than that required of a common carrier.

### V. CONCLUSION

The failure to correct the jury instructions constituted legal error. No contention is made with respect to whether such error was harmless. In any case, we could not say with fair assurance that the result was not affected by this error,[16] and thus the standard for harmless error remains unsatisfied. Accord-

ingly, we REVERSE and REMAND for a new trial.

FABE, Justice, not participating.

CARPENETI, Justice, with whom BRYNER, Justice, joins, concurring.

■ I disagree with the conclusion that the trial judge abused his discretion in limiting the testimony of John Spencer. But because I agree that the jury instructions were inconsistent and that the trial court had an obligation to give a legally correct instruction once the jury expressed its confusion, I join in the decision to reverse and remand.

We have consistently held that trial courts enjoy broad discretion in deciding whether to qualify a witness as an expert and to admit opinion evidence. In *City of Fairbanks v. Nesbett*, we said the decision was entrusted to the "sound discretion" of the trial court.[1] In *Ferrell v. Baxter*, we referred to the "wide discretion" and the "wide latitude" afforded to trial judges in deciding these evidentiary questions.[2] In *Norris v. Gatts*, we repeated the phrase "wide discretion" in the same context.[3] In this case, Judge Hensley carefully exercised his discretion, *allowing* virtually all of the testimony Barrett sought to adduce and excluding only two questions on what might be termed the "ultimate" issues in the case: the standard of care and whether ERA breached it. Even with these limitations, Barrett was allowed to establish, through Spencer, all of the following:

- that during the period "four months prior to the incident [to] three months after the incident, [there were] a tremendous amount of write-ups of pressurization, much more than industry standard on this aircraft."
- that "there was something wrong with this airplane, with the pressurization."
- that Spencer did not "find any documentation of a systematic troubleshooting of the entire pressurization system."

15. *Conam Alaska v. Bell Lavalin, Inc.*, 842 P.2d 148, 153 (Alaska 1992) (quoting *Ollice v. Alyeska Pipeline Serv. Co.*, 659 P.2d 1182, 1185 (Alaska 1983)).

16. *See Patricia R. v. Sullivan,* 631 P.2d 91, 98 (Alaska 1981).

1. 432 P.2d 607, 611–12 (Alaska 1967).

2. 484 P.2d 250, 267 (Alaska 1971).

3. 738 P.2d 344, 350 (Alaska 1987).

- that as "of December, 1990, that there's something wrong with the pressurization system and the compressor probably very well contributed to it."
- that "the reason [Spencer thought that the cabin pressurization fluctuated on the flight in question] is the history of all the records [he] saw on ... this aircraft and its problems with the pressurization."
- that "ERA's continued operation of the aircraft once the pressurization system problems were apparent as a result of the flight crew write-ups and the persistent use of oxygen [was] *reckless.*" (Emphasis added.)

Thus, it is clear that the trial judge allowed very extensive opinion testimony by Spencer. (Indeed, the last piece of testimony set out above appears to be evidence that the standard of care had been breached.) Considering that Spencer had no training or experience as a mechanic and had never done repairs on the aircraft pressurization system, and given the breadth of the testimony by Spencer which the trial court did allow, I do not believe that we can fairly say that the judge abused his broad discretion in drawing the line that he did.